Bradley Austin
Nevada Bar No. 13064
SNELL & WILMER
1700 South Pavilion Center Drive, Suite 700
Las Vegas, NV 89135
Telephone: 702.784.5247
baustin@swlaw.com

Jim Ducayet (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: 312.853.7000
Facsimile: 312.853.7036
jducayet@sidley.com

Colleen T. Brown (*pro hac vice*)
Joshua J. Fougere (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: 202.736.8000
Facsimile: 202.736.8711
ctbrown@sidley.com
jfougere@sidley.com

*Attorneys for Brightstar Global Solutions Corporation*

Nicholas J. Santoro
Nevada Bar No. 532
Oliver J. Pancheri
Nevada Bar No. 7476
SPENCER FANE LLP
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
nsantoro@spencerfane.com
opancheri@spencerfane.com

Cari K. Dawson (*pro hac vice* pending)
David B. Carpenter (*pro hac vice* pending)
ALSTON & BIRD LLP
1201 West Peachtree St.
One Atlantic Center
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777
cari.dawson@alston.com
david.carpenter@alston.com

*Attorneys for IGT*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

LINDSAY LOESCHER, BENJAMIN MORRIS, MITCHELL SCHOENBRUN, and CAROL ZIMAN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

INTERNATIONAL GAME TECHNOLOGY, a Nevada Corporation, and BRIGHTSTAR GLOBAL SOLUTIONS CORPORATION, a Delaware corporation,

Defendants.

Case No. 2:25-cv-01917-GMN-NJK

Consolidated with:
Case No. 2:25-cv-01918
Case No. 2:25-cv-01956
Case No. 2:25-cv-10954
Case No. 2:25-cv-02048

**DEFENDANTS' MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

BACKGROUND ..... 3

A. The Companies ..... 3

B. The November 2024 Data Breach ..... 4

C. The Named Plaintiffs ..... 5

D. This Lawsuit ..... 8

LEGAL STANDARD ..... 8

ARGUMENT ..... 9

I. Plaintiffs Lack Article III Standing ..... 9

A. Plaintiffs Fail to Allege Cognizable Injury-in-Fact Based on Future Harms ..... 9

1. There Is No Imminent or Substantial Risk of Future Harm ..... 9

2. Other Allegations of Future Harm Are Not Viable ..... 11

B. Plaintiffs Fail to Allege Cognizable Injury-in-Fact Based on Past Harms ..... 13

C. Plaintiffs Fail to Allege Traceability ..... 15

II. Plaintiffs Fail to State a Claim upon Which Relief May Be Granted. ..... 16

A. Choice of Law. ..... 16

B. Plaintiffs Fail to State a Claim for Negligence (Count I). ..... 17

1. Economic Loss Doctrine ..... 17

2. No Breach ..... 19

3. No Duty ..... 19

C. Plaintiffs Fail to State a Claim for Breach of Contract (Count II). ..... 21

D. Plaintiffs Fail to State a Claim for Unjust Enrichment (Count III). ..... 23

E. Plaintiffs Fail to State a Claim for Invasion of Privacy (Count IV) ..... 25

1. Intrusion upon Seclusion ..... 25

2. Public Disclosure of Private Facts ..... 27

F. Plaintiffs Fail to State a Claim Under the Nevada Consumer Fraud Act (Count V) ..... 28

G. Plaintiffs Fail to State a Claim under the CCPA (Count VI). ..... 31

H. The California Plaintiff Fails to State a Claim under California's Unfair Competition Law (Count VII) ..... 33

1. The California Plaintiff Fails to Allege an Injury That Confers Standing to Bring a UCL Claim. ..... 33

2. The California Plaintiff's UCL Claim Fails Because He Fails to Sufficiently Allege That He Does Not Have an Adequate Remedy at Law. ..... 33

3. Plaintiffs Fail to Allege a Violation of the UCL. ..... 34

CONCLUSION ..... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ables v. Brooks Bros. Grp.*,
No. CV 17-4309, 2018 WL 8806667 (C.D. Cal. June 7, 2018) ....................14

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ....................25, 26, 28, 32

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ....................34

*Ames v. Caesars Ent. Corp.*,
No. 17-cv-02910, 2019 WL 1441613 (D. Nev. Apr. 1, 2019)....................25

*Antman v. Uber Techs., Inc.*,
No. 15-CV -01175, 2018 U.S. Dist. LEXIS 79371 (N.D. Cal. May 10, 2018) ....................34

*In re Apple Processor Litig.*,
No. 22-cv-16164, 2023 WL 5950622 (9th Cir. Sep. 13, 2023) ....................23

*Arney v. United States*,
479 F.2d 653 (9th Cir. 1973) ....................20

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) ....................20

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) ....................12

*Bednyak v. Fin Risk Mitig., Inc.*,
739 F. Supp. 3d 353 (E.D. La. 2024)....................23

*Beltran v. Doctors Med. Ctr. of Modesto*,
No. 23-cv-01670, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ....................23

*Bertucelli v. Carreras*,
467 F.2d 214 (9th Cir. 1972) ....................10

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025) ....................22

*Bogard v. Inter-State Assur. Co.*,
589 S.E.2d 317 (Ga. Ct. App. 2003)....................24

*Brown v. City of Valparaiso*,
67 N.E.3d 652 (Ind. Ct. App. 2016)....21

*Burns v. Mammoth Media, Inc.*,
No. CV 20-04855, 2023 WL 5608389 (C.D. Cal. Aug. 29, 2023)....12

*Butler v. Thomson*,
92 U.S. 412 (1875)....18, 24

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
824 F.3d 1156 (9th Cir. 2016)....9

*Carlson v. Coca-Cola Co.*,
483 F.2d 279 (9th Cir. 1973)....20

*Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (1999)....34

*Chen v. JPMorgan Chase Bank, N.A.*,
745 F. Supp. 3d 1025 (C.D. Cal. 2024)....32

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....9, 11

*Cont'l Cas. Co. v. Enodis Corp.*,
417 F. App'x 668 (9th Cir. 2011)....24

*Cottrell v. Smith*,
788 S.E.2d 772 (Ga. 2016)....27

*Crowe v. Managed Care N. Am. Inc.*,
No. 23-S177401, 2024 WL 6863341 (S.D. Fla. Aug. 16, 2024)....19

*CW Farms, LLC v. Egg Innovations, LLC*,
169 N.E.3d 874 (Ind. Ct. App. 2021)....18

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018)....10

*De Meo v. Cooley LLP*,
337 Cal. Rptr. 3d 478 (Cal. Ct. App. 2025)....21, 22

*Detwiler v. Mid-Columbia Med. Ctr.*,
156 F.4th 886 (9th Cir. 2025)....9

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....20

*Dreilling v. Am. Exp. Co.*,
458 F.3d 942 (9th Cir. 2006) ..........3, 4

*Duffy v. Lewis Bros. Bakeries, Inc.*,
760 F. Supp. 3d 704 (S.D. Ind. 2024) ..........20, 21, 27

*Eastside Recovery, LLC v. Calhoun*,
890 S.E.2d 135 (Ga. Ct. App. 2023) ..........23

*Edwards v. Hutchings*,
No. 22-16738, 2025 WL 1132828 (9th Cir. Apr. 17, 2025) ..........11

*Eisenberg v. Alameda Newspapers, Inc.*,
88 Cal. Rptr. 2d 802 (Cal. Ct. App. 1999) ..........22

*EVIG, LLC v. Fantasy, Inc.*,
No. 24-CV-00349, 2025 WL 947543 (D. Nev. Mar. 28, 2025) ..........29

*F.E.R. v. Valdez*,
58 F.3d 1530 (10th Cir. 1995) ..........10

*F.S. v. Captify Health, Inc.*,
No. 23-1142-DDC-BGS, 2024 WL 1282437 (D. Kan. Mar. 26, 2024) ..........13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..........25

*Feins v. Goldwater Bank NA*,
No. CV-22-00932-PHX, 2022 WL 17552440 (D. Ariz. Dec. 9, 2022) ..........30

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015) ..........16

*Ferris v. Wynn Resorts Ltd.*,
462 F. Supp. 3d 1101 (D. Nev. 2020) ..........3

*Fiederlein v. Boutselis*,
952 N.E.2d 847 (Ind. Ct. App. 2011) ..........24

*Florence v. Ord. Express, Inc.*,
674 F. Supp. 3d 472 (N.D. Ill. 2023) ..........12

*Franklin Grove Corp. v. Drexel*,
936 A.2d 1272 (R.I. 2007) ..........18

*Garmon v. Cnty. of Los Angeles*,
828 F.3d 837 (9th Cir. 2016) ..........20

*Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*,
608 S.E.2d 636 (Ga. 2005)....18

*In re Gen. Motors LLC Ignition Switch Litig.*,
339 F. Supp. 3d 262 (S.D.N.Y. 2018)....23

*Gibilterra v. Aurora Loan Servs., LLC*,
No. 12-CV-685, 2013 WL 4040820 (D. Nev. Aug. 6, 2013)....29

*Gilbert v. Edmondson*,
388 S.E.2d 713 (Ga. Ct. App. 1989)....22

*Giles v. Gen. Motors Acceptance Corp.*,
494 F.3d 865 (9th Cir. 2007)....17

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023)....10

*Griffey v. Magellan Health Inc.*,
No. CV-20-01282, 2022 WL 1811165 (D. Ariz. June 2, 2022)....31

*Haywood v. Novartis Pharms. Corp.*,
298 F. Supp. 3d 1180 (N.D. Ind. 2018)....19

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025)....11, 12

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)....14, 15

*IDC Clambakes, Inc. v. Carney ex rel. Goat Island Realty Tr.*,
246 A.3d 927 (R.I. 2021)....24

*J.H. v. St. Vincent Hosp. & Health Care Ctr., Inc.*,
19 N.E.3d 811 (Ind. Ct. App. 2014)....27

*Jaras v. Equifax, Inc.*,
766 F. App'x 492 (9th Cir. 2019)....15

*Johar v. Cal. Unemp. Ins. Appeals Bd.*,
299 Cal. Rptr. 3d 375 (Cal. Ct. App. 2022)....18, 24

*Johnson v. Yuma Reg'l Med. Ctr.*,
769 F. Supp. 3d 936 (D. Ariz. 2024)....14, 20

*Keaton v. Kroger Co.*,
237 S.E.2d 443 (Ga. Ct. App. 1977)....21

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) ....................24

*Keystone Carbon Co. v. Black*,
599 N.E.2d 213 (Ind. Ct. App. 1992)....................22

*King v. Terry*,
805 N.E.2d 397 (Ind. Ct. App. 2004)....................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134, 63 P.3d 937 (2003) ....................33

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010) ....................11

*Kuhns v. Scottrade, Inc.*,
868 F. 3d 711 (8th Cir. 2017) ....................19

*Kwikset Corp. v. Super. Ct.*,
246 P.3d 877 (Cal. 2011) ....................33

*In re LastPass Data Sec. Incident Litig.*,
742 F. Supp. 3d 109 (D. Mass. 2024) ....................23

*Lemaster v. Spartan Tool, LLC*,
No. 08-cv-00731, 2009 WL 700240 (S.D. Ind. Mar. 16, 2009) ....................26

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................16

*Maag v. U.S. Bank, Nat'l Ass'n*,
No. 21-CV-00031-H-LL, 2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ....................32

*Maddox v. Alder*,
No. 23-cv-005352024 ....................29

*Manning v. Zumpano Patricios, P.A.*,
No. 25-cv-2304, 2025 WL 3062563 (S.D. Fla. Nov. 3, 2025) ....................12, 13

*Masterson v. IMA Fin. Grp., Inc.*,
No. 23-cv-02223, 2023 WL 8647157 (D. Kan. Dec. 14, 2023) ....................16

*McCombs v. Delta Grp. Elecs., Inc.*,
676 F. Supp. 3d 1064 (D.N.M. 2023) ....................15

*McDonald v. Navy Fed. Fin. Grp., LLC*,
No. 2:23-CV-01325-ART-EJY, 2023 WL 5797724 (D. Nev. Sep. 7, 2023) ....................30

*In re Merrill Lynch Auction Rate Sales Sec. Litig.*,
758 F. Supp. 2d 264 (S.D.N.Y. 2010)....................23

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
528 F. Supp. 3d 1168 (D. Nev. 2021)....................30

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) (en banc)....................11

*N.G. Hatton Tr. v. Young*,
97 N.E.3d 282 (Ind. Ct. App. 2018)....................20, 21

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024)....................32

*Nwaorie v. United States*,
No. 19-20706, 2023 WL 3034261 (5th Cir. Apr. 21, 2023)....................10

*O'Donnell v. Bank of Am., Nat'l Ass'n*,
504 F. App'x 566 (9th Cir. 2013)....................20, 30

*O'Neil v. Crane Co.*,
266 P.3d 987 (Cal. 2012)....................19

*O'Shea v. Littleton*,
414 U.S. 488 (1974)....................10

*Orkin Exterminating Co. v. FTC*,
849 F.2d 1354 (11th Cir. 1988)....................20

*Ortiz v. Perkins & Co.*,
No. 22-cv-03506, 2022 WL 16637993 (N.D. Cal. Nov. 2, 2022)....................22

*In re Outlaw Lab'y, LLP*,
463 F. Supp. 3d 1068 (S.D. Cal. 2020)....................35

*Owens v. Propes*,
601 F. Supp. 3d 1360 (M.D. Ga. 2022)....................27

*Peatrowsky v. Persolve*,
No. 12-CV-00935, 2014 WL 1215061 (D. Nev. Mar. 24, 2014)....................30

*Phillips v. CBP*,
74 F.4th 986 (9th Cir. 2023)....................13

*Picus v. Wal-Mart Stores, Inc.*,
256 F.R.D. 651 (D. Nev. 2009)....................30

*Poole v. Nev. Auto Dealership Invs., LLC*,
449 P.3d 479 (Nev. Ct. App. 2019) .......... 29

*Porten v. Univ. of S.F.*,
134 Cal. Rptr. 839 (Cal. Ct. App. 1976) .......... 27

*Price v. First Fin. Sec., Inc.*,
No. 24-CV-10985, 2025 WL 2427997 (C.D. Cal. July 21, 2025) .......... 31

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020) .......... 12

*Pulliam v. W. Tech. Grp., LLC*,
No. 8:23-CV-159, 2024 WL 356777 (D. Neb. Jan. 19, 2024) .......... 13

*Purvis v. Aveanna Healthcare, LLC*,
563 F. Supp. 3d 1360 (N.D. Ga. 2021) .......... 26

*Ramos v. Liberty Mut. Ins. Co.*,
No. 14-CV-839, 2014 WL 4354138 (D. Nev. Sep. 3, 2014) .......... 29

*Rattagan v. Uber Techs., Inc.*,
553 P.3d 1213 (Cal. 2024) .......... 18

*Ruder v. Pequea Valley Sch. Dist.*,
790 F. Supp. 2d 377 (E.D. Pa. 2011) .......... 20

*Russell v. Salve Regina Coll.*,
890 F.2d 484 (1st Cir. 1989) .......... 26

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 8

*Scoggins v. Floyd Healthcare Mgmt. Inc.*,
No. 14-CV-00274, 2016 WL 11544774 (N.D. Ga. 2016) .......... 21

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
315 Cal. Rptr. 3d 373 (Cal. Ct. App. 2023) .......... 23

*Shlesinger v. Bank of Am., N.A.*,
No. 11-CV-2020-PMP-PAL, 2012 WL 2995698 (D. Nev. July 23, 2012) .......... 28

*Shulman v. Grp. W Prods., Inc.*,
955 P.2d 469 (Cal. 1998) .......... 27

*Sierra-Bay Fed. Land Bank Ass'n v. Super. Ct.*,
277 Cal. Rptr. 753 (Cal. Ct. App. 1991) .......... 21

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................23, 34

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)....................33

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................9

*Stuart v. Kyocera AVX Components Corp.*,
769 F. Supp. 3d 476 (D.S.C. 2025)....................15

*Super. Glass Co. v. E. Greenwich Sav. Fund & Loan Ass'n*,
169 A.2d 380 (R.I. 1961) ....................22

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012) ....................8

*Terpin v. AT & T Mobility LLC*,
118 F.4th 1102 (9th Cir. 2024) ....................17, 18

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22cv2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ....................26

*Torres v. Wendy's Co.*,
195 F. Supp. 3d 1278 (M.D. Fla. 2016)....................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................9, 10, 11, 15

*Turfgrass Grp., Inc. v. Ga. Cold Storage Co.*,
816 S.E.2d 716 (Ga. Ct. App. 2018)....................22

*Waln v. Dysart Sch. Dist.*,
54 F.4th 1152 (9th Cir. 2022) ....................10

*Welk Biology Co. v. Hakumo LLC*,
No. 24-cv-01613, 2025 WL 2421232 (D. Nev. Aug. 20, 2025)....................28

*Whalen v. Michael Stores, Inc.*,
153 F. Supp. 3d 577 (E.D.N.Y. 2015) ....................13, 14

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ....................8

*William v. Bienville Orthopaedic Specialists, LLC*,
737 F. Supp. 3d 411 (S.D. Miss. 2024)....................16

*Williams v. TMC Health*,
No. CV-23-00434, 2024 WL 4364150 (D. Ariz. Sep. 30, 2024)....25

*Woods v. Google, Inc.*,
889 F. Supp. 2d 1182 (N.D. Cal. 2012)....34

*Yarbray v. S. Bell Tel. & Tel. Co.*,
409 S.E.2d 835 (Ga. 1991)....25

*In re Zappos.com, Inc.*,
No. 12-CV-00325-RCJ, 2013 WL 4830497 (D. Nev. Sept. 9, 2013)....25

**Statues and Regulations**

12 CFR 1005.11(c)....14

Cal. Civ. Code §§ 1798.100 to 1798.199.100....8

Cal. Civ. Code § 1798.140(d)(1)....32

Cal. Civ. Code § 1798.150(b)....31

Cal Civ. Code § 17200....33

Cal. Civ. Code §§ 17200 to 17210....8

Nev. Rev. Stat. § 41.600....8

Nev. Rev. Stat. § 41.600(1)....28

Nev. Rev. Stat. § 41.600(2)(E)....28

Nev. Rev. Stat. § 598.0915 to 598.0925....28

Nev. Rev. Stat. § 598.0923(1)(b)....28

Nev. Rev. Stat. § 598.0923(1)(c)....28

R.I. Gen. Laws § 9-1-28.1....27

**Other Authorities**

Brightstar, *Brightstar Achieves Lauded World Lottery Association Security Control Standard* (Oct. 23, 2025), https://tinyurl.com/2s465rm8....4

Brightstar, *Brightstar Lottery – Investor Relations*, https://tinyurl.com/muyar2dz....3

Dan B. Dobbs et al., *Hornbook on Torts* (2d ed. 2016)....17

Int'l Gaming Tech. PLC, *Annual Report (Form 20-F)* (Feb. 2, 2025), https://tinyurl.com/5c6nfvfr (for fiscal year ending Dec. 31, 2024)........................................4

Int'l Gaming Tech. PLC, *Report of Foreign Private Issuer (Form 6-K)* (Nov. 19, 2024), https://tinyurl.com/3utx8je7 ..........................................................................4

ISO/IEC 27001:2022, ISO, https://tinyurl.com/5n85zmp4 (last visited Feb. 2, 2025) ..........................................................................................................................4

Defendants International Game Technology ("IGT")[1] and Brightstar Global Solutions Corporation ("Brightstar") (collectively, the "Companies" or "Defendants"), by and through their undersigned counsel, move to dismiss Plaintiffs' Consolidated Class Action Complaint, ECF No. 32 ("Compl."). This motion is based on the Memorandum of Points and Authorities below, the referenced pleadings, the attached Declaration of Sridhar Jawaharlal (the "Jawaharlal Decl."), and any argument this Court may entertain on behalf of the Companies.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

In November 2024, the Companies were the victims of a criminal data security incident. The Companies investigated, resecured the affected systems and data, and notified potentially impacted individuals as required by law. There is no evidence that any of the data is or ever was posted publicly or on the dark web. And, because of the Companies' prompt response and mitigation efforts, there is no reason to believe it ever will be.

Just as such cybercrimes are an all-too-common part of life today (Compl. ¶¶ 87–92), so are the lawsuits that follow. Plaintiffs' consolidated complaint seeks to hold defendants liable for having been attacked. But the complaint does not even get basic facts about the incident right. It forcefully alleges, for example, that the incident was carried out by a cybercriminal group called Qilin and then centers its allegations around Qilin's supposed "modus operandi." But that is false: Qilin was not responsible for the November 2024 incident underlying this case, and the November 2024 incident is distinct and unrelated to the incident Qilin claimed responsibility for in November 2025.

The complaint should be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

To start, Plaintiffs fail to allege Article III standing. On injury, the complaint opens with pages (at ¶¶ 124–158) of plainly speculative allegations—talking about "potential" events that

[1] The appropriate Defendant in this matter is IGT, which is the U.S. operating entity of the currently named Defendant International Game Technology.

"may" or "can" happen in the future. Such allegations are insufficient on their face. The named Plaintiffs' individualized allegations are equally insufficient—facially and factually. Their alleged harms concern misuse of specific personal information (like their individual credit card, eBay account, personal Gmail account, or bank account number) that was *not* compromised in the incident. Not only that, but many of the allegations are demonstrably false, and none shows *concrete* injury-in-fact *traceable* to the November 2024 security incident.

Plaintiffs also fail to state a claim on the merits for any of their assorted common law and statutory causes of action. To summarize:

- On negligence, the economic loss doctrine is dispositive. Beyond that, the alleged breach of a duty to provide reasonable information security, for example, provides no factual support at all—merely declaring (at ¶ 117) that "Defendants failed to comply with" a host of data security standards without even trying to articulate how.
- The breach of contract claim fails because Plaintiffs do not allege any facts to support the existence of an implied contract, mutual assent, or consideration.
- The unjust enrichment claim fails because, among other things, Plaintiffs admittedly have other causes of action available at law.
- The privacy invasion claims fail because they are brought against the wrong entity—to the extent anyone invaded anything, it was the cybercriminals, not the Companies.
- Plaintiffs' Nevada Consumer Fraud Act ("NCFA") claim fails because Plaintiffs have not alleged a knowing act or omission in connection with "the sale or lease of goods or services," have failed to allege facts showing damages proximately caused by conduct constituting consumer fraud, and run squarely against Nevada's presumption against extraterritoriality.
- Plaintiff Schoenbrun's California Consumer Privacy Act ("CCPA") claim fails because he does not plausibly allege that Defendants are covered "businesses" or

that they violated the CCPA. And he cannot seek statutory damages under the CCPA because he admittedly failed to comply with the CCPA's 30-day notice requirement, which is a precondition to such relief.

- Plaintiff Schoenbrun's California Unfair Competition Law ("UCL") claim fails because he has not alleged a concrete loss to support UCL standing, has an adequate remedy of law, and has not plausibly alleged "unfair," "unlawful," or "fraudulent" conduct under the UCL.

This is a try-everything-and-hope-something-sticks pleading. But the reality is that Plaintiffs have not alleged any legally cognizable injury as a result of the incident nor any plausible basis to hold the Companies liable for being the victims of a crime. The Court should dismiss.

## BACKGROUND

### A. The Companies

Brightstar Global Solutions Corporation is a business that provides operational and technical support to state lotteries. *See* Compl. ¶ 3; Brightstar, *Brightstar Lottery – Investor Relations*, https://tinyurl.com/muyar2dz.[2] IGT is a business that provides gaming, digital and financial technology solutions. *See* Compl. ¶ 38. At the time of the incident, Brightstar and IGT operated as a unified business under the name International Game Technology PLC (the "Company"). *See* Compl. ¶¶ 2–3, 2 n.2. In July 2025, after the incident, that Company separated its gaming and digital business from its lottery-related businesses. *See id.* ¶¶ 2, 4 n.5. The gaming and digital business now operates as IGT, and Brightstar operates the lottery-related business. *See id.* ¶¶ 3–4, 2 n.2.

[2] The amended complaint cites and quotes from this webpage; accordingly, the Court may consider it when ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See, e.g.*, *Dreilling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (noting that a court "may consider documents referred to in the complaint or any matter subject to judicial notice" in ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)); *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1117 (D. Nev. 2020) (Navarro, J.) ("[A] court may take judicial notice . . . [of] publicly accessible websites whose accuracy and authenticity is not subject to dispute." (citation omitted)); *id.* (considering documents in ruling on a Rule 12(b)(6) motion because they "are excerpted or referenced in Plaintiffs' Amended Complaint" and, therefore, "incorporated by referenced").

At the time of the incident, the Company was ISO 27001 certified—a widely recognized benchmark for meeting industry-best practices for information security. *See* Int'l Gaming Tech. PLC, *Annual Report (Form 20-F)* (Feb. 2, 2025), https://tinyurl.com/5c6nfvfr (for fiscal year ending Dec. 31, 2024);[3] Jawaharlal Decl. ¶ 4; *see also* Brightstar, *Brightstar Achieves Lauded World Lottery Association Security Control Standard* (Oct. 23, 2025), https://tinyurl.com/2s465rm8; ISO/IEC 27001:2022, ISO, https://tinyurl.com/5n85zmp4 (last visited Feb. 2, 2025). Independent IT experts have assessed and reissued that certification annually since 2010—including at the time of the data breach at issue in this case—and Brightstar holds that certification to this day. *See* Jawaharlal Decl. ¶ 4.

**B. <u>The November 2024 Data Breach</u>**

On November 17, 2024, the Company learned that an unauthorized third party had accessed certain internal computer systems. *See* Jawaharlal Decl. ¶ 6. The Company reacted swiftly—moving to resecure systems, investigate the incident, and coordinate with law enforcement. *See id.* ¶¶ 7–10. The Company activated its cybersecurity incident response plan and an investigation was commenced to contain, assess, and remediate the unauthorized activity. *See id*. The Company proactively took certain systems offline, disabled all user accounts found to be compromised, re-set login credentials, and enhanced cyber defenses. *See id*. The Company publicly disclosed the incident within days, including in a Form 6-K filed with the Securities and Exchange Commission on November 19, 2024. *See* Int'l Gaming Tech. PLC, Report of Foreign Private Issuer (Form 6-K) (Nov. 19, 2024), https://tinyurl.com/3utx8je7. It also reported the matter to federal law enforcement and took measures to resecure the affected information. *See* Jawaharlal Decl. ¶¶ 8, 10.

The Company's proactive response worked. Since November 19, 2024, there has been no further indication of the threat actor's presence or activity on the Companies' systems. *See id.* ¶ 9. The Companies also continue to monitor the dark web for any sign that information from the

[3] The Court may consider public filings with the Securities and Exchange Commission. *See Dreilling*, 458 F.3d at 946 n.2 (noting that "SEC filings" are judicially noticeable).

Companies has been published or misused as a result of this incident. *See id.* ¶ 10. They have found none. *See id.*

Investigating the incident and determining the relevant affected data and data subjects took time. That was due to the complexity and the nature of the impacted data. *See id.* ¶ 12. By September 19, 2025, once the Companies had finalized the identification of legally relevant data and data subjects, they began to notify individuals whose data may have been affected as required by law. *See id.* ¶¶ 13–14. That "may" is critical—impacted data varied by individual, and the notifications used standardized language stating that the recipient's information "*may*" have been affected and also clarified that the companies "are not aware of any misuse of your personal information." Compl. Ex. A, at 2 (emphasis added). Out of an abundance of caution, the Companies provided potentially affected individuals with 24 months of free identity monitoring. *See id.*

Plaintiffs incorrectly attribute the November 2024 breach to Qilin, a Russia-based ransomware group. *See* Compl. ¶¶ 8–12. The data security incident at International Game Technology PLC in November 2024 at issue here is distinct from—and should not be conflated with—reports of Qilin's claims of a separate, subsequent attack in November 2025. *See* Jawaharlal Decl. ¶ 11. Indeed, the sources Plaintiffs cite do not state or suggest Qilin was claiming responsibility for the November 2024 incident affecting the Company one year prior. *See* Compl. ¶¶ 65–66 & n.19–20.

**C. <u>The Named Plaintiffs</u>**

Plaintiffs Lindsay Loescher, Benjamin Morris, Mitchell Schoenbrun, and Carol Ziman purport to bring this suit on behalf of employees and customers of Brightstar or IGT. They are residents of Indiana (Loescher), Georgia (Morris), California (Schoenbrun), and Rhode Island (Ziman). *See id.* ¶¶ 34–37.

*<u>Lindsay Loescher.</u>* Plaintiff Loescher alleges that she is a former employee of IGT and provided her information in order to be hired. *See id.* ¶¶ 174–175. She does not say what her title or responsibilities were, when she was hired, or when her employment ended. Loescher alleges

that she incurred nine unauthorized or fraudulent charges on a "Regent payment card." *Id.* ¶ 180. But she does not allege that her payment card information was part of the breach. To the contrary, she and the other Plaintiffs allege that credit card information was *not* compromised in the breach. *See id.* ¶ 128 ("[T]he information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retail[] data breach"). That is correct; Loescher's credit card data was not compromised in the breach. *See* Jawaharlal Decl. ¶ 15. Loescher also does not allege that she paid for any of those unauthorized charges—only that she received replacement cards (presumably with a new credit card number) and enrolled in credit monitoring. *See* Compl. ¶ 180. She further alleges there were "inaccuracies on her credit report" but does not allege that such inaccuracies lead to any fraud, or were related to any information provided by the Companies. *Id.* ¶ 181. She alleges fraudulent "attempt[s]" and inquiries for an auto loan in her name, but does not allege that there was any *successful* fraudulent auto loan in her name. *Id.* ¶¶ 181, 183. She alleges an unauthorized "attempt[]" to access her Gmail account, but does not allege that the attempt was successful. *Id.* ¶ 182. Further, her Gmail account credentials were not affected in the breach. *See* Jawaharlal Decl. ¶ 15. And she claims an "increase" in spam or suspicious calls, texts, and emails, conceding that she (like everyone with a phone or email account) already received such outreaches. *See* Compl. ¶ 184.

*Benjamin Morris.* Plaintiff Morris alleges that he is a "customer of Defendants or a lottery or gaming venue supported by Defendants." *Id.* ¶ 191. He does not specify what services he bought as a "customer." Morris alleges generally that he "experienced several fraudulent credit card charges." *Id.* ¶ 197. But he does not allege any specifics about those alleged charges and does not allege that he had to pay anything. He also does not allege that his credit card information was part of the breach. Nor could he: his credit card was not involved. *See* Jawaharlal Decl. ¶ 16. He also alleges an increase in spam or suspicious calls, texts, and emails, conceding he already received such outreach. Compl. ¶ 197.

*Mitchell Schoenbrun.* Like Morris, Plaintiff Schoenbrun alleges that he is a "customer of Defendants or a lottery or gaming venue supported by Defendants." *Id.* ¶ 204. Yet in the same

breath, he alleges that he "does not recall providing his Private Information to Defendants." *Id.* Also like Morris, Schoenbrun does not specify what services he bought as a "customer." Schoenbrun alleges that someone "attempted" an unauthorized transfer from his bank account. *Id.* ¶ 208. He does not allege that the attempt succeeded or that he lost anything as a result. And he does not allege that his bank account information was part of the data breach—it was not. *See* Jawaharlal Decl. ¶ 17. He then alleges that someone accessed his eBay account to fraudulently purchase a computer. *See* Compl. ¶ 208. But he does not allege his eBay account information was part of the breach—again, it was not—nor does he allege he paid for the transaction, or even that anyone used one of the payment methods saved to his account. He alleges that his email address has been used to create online accounts, *see* Compl. ¶ 208, but does not allege his email account was part of the breach. Finally, he too claims an "increase" in spam or suspicious communications—specifically offers to enroll in a Medicaid Advantage Plan, conceding he already received such communications and offering no allegations to support the idea that defendants were the but-for cause of increased Medicaid Advantage Plan offers. *See id.* ¶¶ 197, 208. Schoenbrun alleges that he "was notified by email" that "his information was found on the Dark Web" but does not specify when he received this email, from whom, what information was allegedly found or any specifics to substantiate the claim made by the unidentified third party. *See id.* ¶ 213.

*Carol Ziman.* Plaintiff Ziman alleges that she is a former employee of "a company that merged with Defendant IGT in 2015." *Id.* ¶ 216. She too does not say what her title or responsibilities were, when she was hired, or when her employment ended. Ziman further alleges that she experienced duplicative monthly charges to her bank account. *See id.* ¶ 220. But she does not allege that her bank account information was part of the breach—and it was not. *See* Jawaharlal Decl. ¶ 18. Like all the others, she alleges that she has experienced "increased" spam calls and emails, conceding she had already received such communications before the Incident. *See* Compl. ¶ 221.

**D. This Lawsuit**

Plaintiffs assert common law claims for negligence and negligence per se, breach of implied contract, unjust enrichment, invasion of privacy, and alleged violations of Nevada's Consumer Fraud Act, Nev. Rev. Stat. § 41.600, California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 to 1798.199.100, and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 to 17210. Plaintiffs' claims all stem from their allegation that Defendants failed "to implement adequate and reasonable cyber-security procedures and protocols necessary to protect [their] and Class Members['] Private Information from a foreseeable and preventable cyber-attack." Compl. ¶ 23. Plaintiffs assert the common law and NCFA claims on behalf of a nationwide class of "[a]ll persons whose Private Information was compromised as a result of the Data Breach," and Plaintiff Schoenbrun (the "California Plaintiff") asserts his CCPA and UCL claims on behalf of a California subclass consisting of "[a]ll persons residing in California whose Private Information was compromised as a result of the Data Breach." *Id.* ¶ 232.

## LEGAL STANDARD

*Lack of Subject-Matter Jurisdiction.* Because standing is an aspect of Article III subject-matter jurisdiction, it is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying plausibility standard to facial attack). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. The court "may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Id.*

*Failure to State a Claim.* "Federal Rule of Civil Procedure 12(b)(6) requires dismissal . . . when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the

complainant to relief." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025). The question is whether the well-pleaded factual allegations, and disregarding all conclusory allegations, plausibly suggest an entitlement to relief. *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

## ARGUMENT

### I. Plaintiffs Lack Article III Standing.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs' allegations do not meet these requirements under both a facial and factual attack.

#### A. Plaintiffs Fail to Allege Cognizable Injury-in-Fact Based on Future Harms.

Much of Plaintiffs' alleged injury revolves around a speculative risk of future harm. None of Plaintiffs' various alleged injuries does—or could—rise to the level of "concrete, particularized, and actual or imminent" harm needed to satisfy Article III. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

##### *1. There Is No Imminent or Substantial Risk of Future Harm.*

As explained in the attached declaration, Jawaharlal Decl. ¶¶ 9–13, there is simply no ongoing or non-speculative risk to Plaintiffs because the Companies contained the incident and resecured the data. As a result, there is and can be no evidence that their personal data has been disseminated on the dark web or misused as a result of this incident. That is dispositive.

For damages, exposure to a "risk of future harm" must "itself cause[] a *separate* concrete harm." *TransUnion*, 594 U.S. at 436. Plaintiffs' vague allegations that their information is on the dark web (Compl. at ¶¶ 68, 120, 126, 188, 201, 213, 226, 325) do "not demonstrate that the risk of

future harm materialized" into any "actual" or "separate" harm. *TransUnion*, 594 U.S. at 436–37. Worse, the allegations are all summarily pled "on information and belief," and, "since that information was a matter of public record and not something peculiarly within the knowledge of the defendants, pleading on information and belief was improper." *Bertucelli v. Carreras*, 467 F.2d 214, 215 n.4 (9th Cir. 1972) (per curiam); *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022) ("[A] fact ascertainable from a public record may not be alleged on information and belief."). Indeed, if the information were *actually* available on the dark web, then plaintiffs could and should provide specific factual allegations saying as much. *Cf. Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889–90 (11th Cir. 2023) (specific allegations that credit card information accessed in a breach appeared for sale on a particular dark website could amount to injury). That they have not done so only confirms that they have suffered no concrete injury.

"For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Any such risk must be "sufficiently imminent and substantial," *TransUnion*, 594 U.S. at 436, and that is not the case here. Resecuring the data is just like a "refund" and "return[ing] property," which "only alleges a past injury that is insufficient to establish standing to pursue . . . equitable relief." *Nwaorie v. United States*, No. 19-20706, 2023 WL 3034261, at *5 (5th Cir. Apr. 21, 2023) (per curiam); *see also F.E.R. v. Valdez*, 58 F.3d 1530, 1534 (10th Cir. 1995) (concluding that plaintiffs did not "allege a realistic threat of seizure of their psychiatric treatment records" when investigators "returned the files and cannot simply decide to confiscate them again without a warrant issued by a detached and neutral magistrate").

Although older Ninth Circuit cases suggested that a plaintiff may face a sufficiently imminent and real risk of harm after a cyberattack when (i) the attack involved highly sensitive information that could be used to perpetrate fraud; and (ii) that data was stolen, and not simply

viewed, *see, e.g.*, *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010), *TransUnion* has since clarified that "the risk of future harm on its own does not support Article III standing," 594 U.S. at 441; *see also Edwards v. Hutchings*, No. 22-16738, 2025 WL 1132828, at *1 (9th Cir. Apr. 17, 2025) ("[P]ast exposure to a risk, by itself, is not a concrete injury that can give rise to a justiciable controversy," including when "[t]he risk of future harm here did not materialize."). Here, there is nothing more than alleged past exposure and future risk—especially since there is no non-speculative risk that the resecured information will be disclosed to anyone in the future.

***2. Other Allegations of Future Harm Are Not Viable.***

Even if the resecuring of the data were not dispositive all by itself—and it should be—Plaintiffs' miscellaneous future-harm allegations independently fail.

*Mitigation activities.* Alleged harm from mitigation activities, like the time and effort to investigate their credit and financial information for potential identity theft, *see, e.g.*, Compl. ¶¶ 22, 28, 123, 138, 162, 179, 186, 196, 199, 209, 211, 222, 224, does not give Plaintiffs standing. That is because Plaintiffs cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. And that is all that Plaintiffs are trying to do here—with no actual injury to protect, mitigation activities to try to prevent hypothetical harm is not sufficient either. Compl. ¶¶ 186, 199 211, 224; *see, e.g.*, *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (en banc) ("[A]ny assertion of wasted time and effort necessarily rises or falls along with [the] determination of whether the risk posed by [the legal] violation . . . is itself a concrete harm."); *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 435 (4th Cir. 2025) (data breach case) ("[*I*]*f* time spent and emotional distress felt are concrete injuries, they may serve as the sole basis for standing to recover damages only when incurred in response to a separate imminent harm. They do not suffice for standing on their own.").

*Emotional Distress.* A few times, Plaintiffs passingly refer to "emotional distress." *E.g.*, Compl. ¶¶ 123(d), 185, 198, 210, 223, 271, 286, 334. Courts across the country have held that emotional distress is not a concrete injury. *See Florence v. Ord. Express, Inc.*, 674 F. Supp. 3d

472, 482 (N.D. Ill. 2023) (alleged "emotional distress, anxiety, and annoyance based on the risk of future harm" from data breach did not support standing) (collecting cases). Even "*if* . . . emotional distress felt" is a concrete injury, however, it does "not suffice for standing on [its] own" and "may serve as the sole basis for standing . . . only when incurred in response to a separate imminent harm." *Holmes*, 156 F.4th at 435 (emphasis in original); *see also Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023) ("[W]orry and anxiety are not the kind of concrete injury essential to standing. If they were, almost everyone could litigate about almost anything, because just about everything anyone does causes some other people to fret."). Thus, because "there is no substantial risk of future harm[,] . . . . Plaintiff[s'] allegations of emotional distress and anxiety, on their own, are not enough to establish a concrete injury necessary for the purposes of standing." *Manning v. Zumpano Patricios, P.A.*, No. 25-cv-2304, 2025 WL 3062563, at *8 (S.D. Fla. Nov. 3, 2025).

*Diminished Data Value.* Plaintiffs allege that the data breach resulted in the diminution in value of their data. *E.g.*, Compl. ¶¶ 22, 123(h), 169, 286, 296, 324, 343. That fails for at least two reasons. First, Plaintiffs must allege an "impairment of their ability to participate in" a market for their personal information, *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234–36 (D. Nev. 2020), *aff'd*, 845 F. App'x 613 (9th Cir. 2021), but they do not do so. Compl. ¶¶ 164–169. Nor could they: far from alleging that they intended to sell their data, Plaintiffs' alleged concerns about their privacy (at ¶¶ 22, 33, 48, 50, 64, 139, 178, 185, 195, 198, 207, 210, 219, 223, 271, 286, 296, 299–316, 334) make it implausible they would do so. Second, alleged diminution in value does not amount to "concrete injury" when plaintiffs do not plausibly allege a market for their information. *Pruchnicki*, 439 F. Supp. 3d at 1234–36; *Burns v. Mammoth Media, Inc.*, No. CV 20-04855, 2023 WL 5608389, at *3 (C.D. Cal. Aug. 29, 2023). That is the case here: there are "no cogent allegations of a market for [Plaintiffs'] information," *Pruchnicki*, 439 F. Supp. 3d at 1234–36, just vague claims about "legitimate and dark markets" for private information, Compl. ¶¶ 164–169.

*Privacy Interest.* Finally, Plaintiffs also allude to concerns that the data breach jeopardized a vague privacy interest. *See, e.g.*, Compl. ¶¶ 22, 33, 85, 139, 190, 198, 210, 223, 271, 299–316, 334. But the Ninth Circuit has rejected the proposition that a privacy interest alone can form the foundation of a concrete injury. *Phillips v. CBP*, 74 F.4th 986, 995–96 (9th Cir. 2023) ("[P]laintiffs do not show that the type of information contained in the records—names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations—is so sensitive that another's access to that information 'would be highly offensive to a reasonable person' or otherwise gives rise to . . . injury to privacy interests" for standing purposes.). Other courts have, as well. *See, e.g.*, *Manning*, 2025 WL 3062563, at *8 ("Since there is no substantial risk of future injury at this juncture, Plaintiff's loss of privacy allegations are insufficient to establish a concrete injury."); *F.S. v. Captify Health, Inc.*, No. 23-1142-DDC-BGS, 2024 WL 1282437, at *4 (D. Kan. Mar. 26, 2024) ("Loss of privacy and confidentiality are present in every data breach case, and standing alone, they don't demonstrate a concrete injury."); *Pulliam v. W. Tech. Grp., LLC*, No. 8:23-CV-159, 2024 WL 356777, at *9 (D. Neb. Jan. 19, 2024) ("Plaintiffs' allegations regarding 'loss of privacy' do not constitute an injury in fact.").

**B. Plaintiffs Fail to Allege Cognizable Injury-in-Fact Based on Past Harms.**

The complaint also makes a series of allegations of past harm—some general and some specific to the named Plaintiffs. They all fail.

*First*, each plaintiff alleges that someone misused their financial information, but that alone does not establish actual injury. Numerous courts have recognized as much. *See, e.g.*, *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1282 (M.D. Fla. 2016) ("[M]ere fraudulent charges on debit or credit cards do not rise to the level of actual identity theft sufficient to establish standing." (collecting cases)); *Whalen v. Michael Stores, Inc.*, 153 F. Supp. 3d 577, 580 (E.D.N.Y. 2015) (concluding that plaintiff lacked standing based on allegedly fraudulent charges where she "ha[d] not alleged that she suffered any unreimbursed charges"), *aff'd*, 689 F. App'x 89 (2d Cir. 2017); *id.* at 581 ("[E]ven if the pending [fraudulent] charges were accepted by the bank, [the plaintiff] would not have suffered any liability given the zero-fraud-liability policy of every major card

issuer in the country, including Whalen's card issuer." (citation modified)); *Ables v. Brooks Bros. Grp.*, No. CV 17-4309, 2018 WL 8806667, at *4 (C.D. Cal. June 7, 2018) ("These cases are consistent with other data-breach cases in [the Ninth] Circuit.").

These principles control for each Plaintiff here. Loescher alleges unauthorized card charges and replacement cards, *see* Compl. ¶ 180, but she does not allege (1) that her credit card information was compromised or (2) any actual monetary harm as a result. Morris just summarily alleges that he incurred "several fraudulent credit card charges"—devoid of factual content. *See id.* ¶ 197. Schoenbrun alleges that someone used his eBay account to make a fraudulent purchase. *See id.* ¶ 208. But he does not allege that anyone used one of his payment methods in his eBay account or that he suffered monetary harm or that his eBay account or credential information was compromised. Ziman alleges unauthorized checking account charges and fees. *See id.* ¶ 220. But none of this information was compromised in the incident. *See* Jawaharlal Decl. ¶ 18. In addition, she acknowledges that she was "reimbursed for the fraudulent charges." Compl. ¶ 220. And while she says that she has not yet been reimbursed for $120 in bank fees, *see id.*, there is no allegation that she has been refused reimbursement or will not be—presumably because the law *requires* reimbursement.[4]

*Second*, Loescher and Schoenbrun's allegations of *attempted* misuse of their financial information (at ¶¶ 180–181, 183, 208) are even farther afield—neither alleges that any such "attempt" was successful. And "targeted *attempts* to commit identity theft . . . merely present a risk of identity theft, they cannot plausibly be considered independent injuries." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022); *see also Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936, 951 (D. Ariz. 2024) ("Absent from [the plaintiff's] allegations [is] any indication

---

[4] *See* 12 C.F.R. § 1005.11(c); *id.* pt. 1005, supp. I, 11(c)-6 ("**Correction of an error.** If the financial institution determines an error occurred, within either the 10-day or 45-day period, it must correct the error (subject to the liability provisions of §§ 1005.6(a) and (b)) including, where applicable, the crediting of interest and the refunding of any fees imposed by the institution.")

the suspicious activity resulted in any charges or any form of harm other than possibly lost time in responding to the bank's notice. Therefore, his alleged harm here is not cognizable.").

*Third*, Loescher's allegations concerning incorrect information on her credit report (at ¶ 181) likewise do not suffice. "The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *TransUnion*, 594 U.S. at 434. The Ninth Circuit agrees: "[w]ithout any allegation of the [inaccurate] credit report harming Plaintiffs' ability to enter a transaction with a third party in the past or imminent future, Plaintiffs have failed to allege a concrete injury for standing." *Jaras v. Equifax, Inc.*, 766 F. App'x 492, 495 (9th Cir. 2019).

*Finally*, each plaintiff alleges an increase in spam calls, texts, and emails (at ¶¶ 184, 197, 208, 221), but that is not a cognizable harm and, in any event, is too conclusory. As one court summarized, "[s]pam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications." *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) (collecting cases); *see also Znyga*, 600 F. Supp. 3d at 1052 (construing spam messages as "targeted *attempts* to commit identity theft" and concluding they could not "plausibly be considered independent injuries" for standing). There is "no factual support—including the dates or substance of the alleged calls or emails—to sufficiently allege an injury in fact," and "Plaintiffs' bare allegation regarding an increase in spam calls and/or emails is [in]sufficient to establish Article III standing." *Stuart v. Kyocera AVX Components Corp.*, 769 F. Supp. 3d 476, 489 (D.S.C. 2025).

**C. <u>Plaintiffs Fail to Allege Traceability.</u>**

Even if some of the alleged injuries were cognizable, Plaintiffs cannot show that any such cognizable injury is traceable to this particular data breach—another part of the "irreducible constitutional minimum."

Article III demands "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560 (1992) (citation modified). "In today's society, an individual's PII and PHI can be stolen in myriad ways, often without the individual's knowledge. Data breaches and other forms of data theft are so prevalent that it is seemingly impossible to trace the misuse of personal information to one particular breach. The mere fact that [Plaintiffs] experienced misuse of their PII or learned that some of their PII had been stolen after the data breach is insufficient to show that the misuse of their PII is fairly traceable to th[is] data breach." *William v. Bienville Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411, 425 (S.D. Miss. 2024).

That is emphatically the case here. *None* of the particular information that was allegedly used by identity thieves—credit card information, eBay accounts, or a bank account number—was information compromised for these named Plaintiffs in the data breach. Jawaharlal Decl. ¶¶ 15–18. That means that Plaintiffs have failed to show that any alleged harm based on that information is plausibly traceable to the incident over which they have sued. As one court held in analogous circumstances, "allegations that someone attempted to open a bank account in his name, attempted to log in to his email accounts, and that he received an increased number of email advertisements targeting his medical conditions do not allege injuries in fact fairly traceable to the Data Breach, since Plaintiff has not alleged that bank account information or email addresses were on the stolen backup data tapes." *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015); *see also Masterson v. IMA Fin. Grp., Inc.*, No. 23-cv-02223, 2023 WL 8647157, at *4 (D. Kan. Dec. 14, 2023) (rejecting traceability because "there are no allegations that [the defendant] had the information [the plaintiffs] claim was misused"). The same is true here, and the Court can deny standing on this independent basis as well.

## II. Plaintiffs Fail to State a Claim upon Which Relief May Be Granted.

Even if standing were not dispositive, the complaint also fails to state a claim for relief on the merits.

### A. Choice of Law

Nevada's choice of law rules apply to this litigation. Under Nevada's most significant relationship test, Plaintiffs' home states' laws (Rhode Island, Georgia, California, and Indiana)

almost certainly apply to their respective common law negligence, negligence per se, breach of implied contract, unjust enrichment, and invasion of privacy claims. However, the Court need not conclusively decide choice of law at this time because, under any potentially applicable states' laws (including Nevada), Plaintiffs' claims should be dismissed. Defendants expressly reserve the right to challenge choice of law at a later date, including which states' laws apply to Plaintiffs' common law claims and how the potential variation between the applicable states' laws impacts class certification.

**B. Plaintiffs Fail to State a Claim for Negligence (Count I).**

The elements for a negligence claim generally include: (1) the defendant owed the plaintiff a duty to exercise reasonable care; (2) the defendant breached that duty; (3) the defendant's conduct was both the factual (or but-for) and legal (sometimes called "proximate") cause of the plaintiff's harm; and (4) the plaintiff suffered cognizable damages. *See* Dan B. Dobbs et al., *Hornbook on Torts* 197–98 (2d ed. 2016). Here, Plaintiffs' negligence claim fails at the threshold under a defense known as the "economic loss doctrine," and also fails to plausibly allege that IGT and Brightstar breached a duty owed to Plaintiffs.

***1. Economic Loss Doctrine***

"Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). To that end, the doctrine bars contracting parties from seeking to hold one another liable for negligence based on "damages that are solely monetary, as opposed to damages involving physical harm to person or property," and arise solely from duties underlying the parties' contract. *Id.*; *see Terpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1114 (9th Cir. 2024). Instead, the parties are limited to the remedies they agreed to govern their relationship as reflected in their contract. *See Giles*, 494 F.3d at 873; *Terpin*, 118 F.4th at 1114. The doctrine is commonplace in tort law across the country, *see, e.g.*, Dobbs et al., *supra*, at 1077–80, including Plaintiffs' home states, *see Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1223–24 (Cal. 2024); *Gen. Elec. Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637–38 (Ga. 2005); *CW*

*Farms, LLC v. Egg Innovations, LLC*, 169 N.E.3d 874, 881 (Ind. Ct. App. 2021); *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275–76 (R.I. 2007).

Here, the economic loss doctrine bars Plaintiffs' negligence claim. They allege a duty to safeguard information based on their "agree[ments] to provide Defendants with their Private Information under certain terms." Compl. ¶ 173. They allege that IGT and Brightstar "collected" their information "in connection with Plaintiffs' [customer or employment] relationship[s]." *Id.* ¶ 7; *see also id.* ¶¶ 245–253, 271. Such relationships are paradigmatically contractual. *See, e.g.*, *Butler v. Thomson*, 92 U.S. 412, 415 (1875) ("The essential idea of a sale is that of an agreement or meeting of minds . . . ."); *Johar v. Cal. Unemp. Ins. Appeals Bd.*, 299 Cal. Rptr. 3d 375, 393 (Cal. Ct. App. 2022) ("[T]he relationship between employer and employee is fundamentally contractual in nature."). Plaintiffs further allege that IGT and Brightstar "[f]ail[ed] to follow their own privacy policies and practices published to their employees and residents." Compl. ¶ 255(e). They even bring a breach-of-contract claim based on the same duty to safeguard their information. *See, e.g.*, *id.* ¶ 276. And their harms are principally a risk of identity theft—a "financial risk," *Terpin*, 118 F.4th at 1114 (citation omitted)—as well as other economic harms, like lost value in their information and opportunity costs, *see, e.g.*, Compl. ¶ 22.

This case is materially identical to the Ninth Circuit's recent decision in *Terpin*. There, the court held that the economic loss doctrine barred a customer's negligence claim under California law against a cell service provider for failing to safeguard information from a data breach. *See* 118 F.4th at 1114. The court's reasoning maps neatly onto this case: the duty to safeguard the information was not "'independent of' the parties' contract"; the provider "had access to [his] customer information through its contractual relationship with him." *Id.* at 1116. And the plaintiff simultaneously brought a breach-of-contract claim. *See id.* at 1114. Like in *Terpin*, the Court should hold that the economic loss doctrine bars Plaintiffs' claims under California law and under the comparable laws of Georgia, Indiana, and Rhode Island.

***2. No Breach***

Plaintiffs also do not plausibly allege any breach of a supposed duty to safeguard their information. This is the entirety of Plaintiffs' allegations of breach: "The foregoing frameworks are existing and applicable industry standards in the casino, gaming, and lottery industry, and Defendants failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach." Compl. ¶ 117. There are zero factual allegations explaining how or why the companies supposedly "failed to comply" with a mishmash of (inapplicable) standards, particularly in light of the Company's ISO 27001 certification at the time of the incident. The complaint does not plausibly allege anything that the Companies did or did not do, much less anything that amounted to a breach of a duty. The "implied premise that because data was hacked [the Companies'] protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss." *Kuhns v. Scottrade, Inc.*, 868 F. 3d 711, 717 (8th Cir. 2017) (citation modified).

***3. No Duty***

To the extent Plaintiffs suggest IGT and Brightstar had a duty to prevent *all* data breaches—regardless of the sophistication of the cybercriminal—that simply is not true. Such a rule would be tantamount to strict liability. *See O'Neil v. Crane Co.*, 266 P.3d 987, 1005–06 (Cal. 2012) ("The strict liability doctrine derives from judicially perceived public policy considerations and therefore should not be expanded beyond the purview of these policies." (citation modified)). And "the existence of a breach, by itself, does not show that systems were inadequate" for purposes of a negligence claim. *Crowe v. Managed Care N. Am. Inc.*, No. 23-S177401, 2024 WL 6863341, at *6 (S.D. Fla. Aug. 16, 2024); *see also Haywood v. Novartis Pharms. Corp.*, 298 F. Supp. 3d 1180, 1193 (N.D. Ind. 2018) ("Imposing a duty to safeguard information from all possible disclosures upon any party or entity who happens to be in possession of the personal information of another would expand liability in a way that has the potential to stifle the collection of data and the routine processing of information.").

Plaintiffs' invocations of the Federal Trade Commission Act ("FTCA") and the Health Insurance Portability and Accountability Act ("HIPAA") as bases to create a standard of care for a negligence per se claim also fail. "The negligence per se rule holds that a violation of statute is negligence in itself if the statutory violation causes the type of harm the statute was intended to avoid, to a person within the class of persons the statute was intended to protect." Dobbs et al., *supra*, at 243. Here, negligence per se is misplaced for several reasons.

*First*, these "federal statute[s] [do not] create a private right of action, and plaintiffs can't use [state] law to engineer one." *O'Donnell v. Bank of Am., Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013); *see Carlson v. Coca-Cola Co.*, 483 F.2d 279, 280 (9th Cir. 1973) (no private cause of action under FTCA); *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016) (no private cause of action under HIPAA); *see also Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 912 (N.D. Cal. 2024) ("The FTCA does not permit a private cause of action, and district courts do not permit negligence *per se* claims to hinge on the FTCA." (footnote omitted)); *Duffy v. Lewis Bros. Bakeries, Inc.*, 760 F. Supp. 3d 704, 722 (S.D. Ind. 2024) ("[T]he lack of a private right of action in the FTC Act—as legislative evidence—suggests it likely cannot be used as part of a negligence per se claim."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1087 (N.D. Cal. 2023); *Johnson*, 769 F. Supp. 3d at 955 ("[B]oth acts provide their own enforcement mechanisms and do not create a private right of action . . . . Accordingly, the Court will dismiss Plaintiffs' negligence *per se* claim . . . .").

*Second*, negligence per se requires a statute designed to protect a specific class of people, not the public generally. *See, e.g.*, *Arney v. United States*, 479 F.2d 653, 657 (9th Cir. 1973); *N.G. Hatton Tr. v. Young*, 97 N.E.3d 282, 287–88 (Ind. Ct. App. 2018). The FTCA and HIPAA are plainly statutes for protecting the public at large. *See Orkin Exterminating Co. v. FTC*, 849 F.2d 1354, 1368 (11th Cir. 1988) ("The purpose of the Federal Trade Commission Act is to protect the public . . . ." (quoting *Regina Corp. v. FTC*, 322 F.2d 765, 768 (3d Cir. 1963)); *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 403 (E.D. Pa. 2011) ("[HIPAA]'s purpose is to improve the operation of the health care system and reduce administrative costs. I thus find that . . . the

statute's purpose is to protect the interest of the general public, not any one specific group of individuals."); *Scoggins v. Floyd Healthcare Mgmt. Inc.*, No. 14-CV-00274, 2016 WL 11544774, at *41 (N.D. Ga. 2016) (similar).

*Third*, at its core, "a claim of negligence *per se* depends on a determination of legislative intent to make a defendant liable in tort," *Brown v. City of Valparaiso*, 67 N.E.3d 652, 660 (Ind. Ct. App. 2016), and neither the FTCA nor HIPAA reflect such an intent. In fact, both "statute[s] already provide[ ] remedies for a violation of [their] duties," *id.*—and commit those remedies exclusively to enforcement proceedings by federal agencies. Plaintiffs should not be allowed to circumvent Congress's intentional limitation of enforcement powers by shoehorning them into a state common law claim. *See Young*, 97 N.E.3d at 287–88 (rejecting that statutory duties did not support negligence per se claim because the statute conferred enforcement powers to government); *Duffy*, 760 F. Supp. 3d at 722 (similar); *Keaton v. Kroger Co.*, 237 S.E.2d 443, 448 (Ga. Ct. App. 1977) (concluding that statute providing certain remedies results in "limitation of liability for negligence per se to the confines of the civil statute"); *Sierra-Bay Fed. Land Bank Ass'n v. Super. Ct.*, 277 Cal. Rptr. 753, 762 (Cal. Ct. App. 1991) ("[I]t is clear that [the plaintiff] is not pursuing a negligence action in which he urges adoption of a congressionally devised standard of care [but] a private cause of action . . . . [T]he recognition of a state cause of action for damages based upon alleged violations of the Act would undermine the primary purposes of the Act . . . .").

### C. <u>Plaintiffs Fail to State a Claim for Breach of Contract (Count II).</u>

Plaintiffs assert a breach-of-contract claim—specifically, an "implied contract[]," *e.g.*, Compl. ¶ 275—but Plaintiffs fail to adequately plead facts to support the existence of an implied contract, mutual assent, or consideration.

"The distinction between *express* and *implied in fact* contracts relates only to the *manifestation of assent*; both types are based upon the expressed or apparent intention of the parties." *De Meo v. Cooley LLP*, 337 Cal. Rptr. 3d 478, 492 (Cal. Ct. App. 2025) (citation modified); *see also, e.g.*, *Turfgrass Grp., Inc. v. Ga. Cold Storage Co.*, 816 S.E.2d 716, 721 (Ga. Ct. App. 2018) (similar); *U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 377–78 (D.N.J.

2024) (similar). The elements of a claim for breach of contract are the existence of a contract, the plaintiff's performance or excuse therefrom, the defendant's breach, and resulting damages. *See Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025).

To the extent that Plaintiffs' allusions to a "contract" are meant to allege an *express* contract with IGT or Brightstar, that would preclude the existence of any *implied* contract concerning the same matters. *See Eisenberg v. Alameda Newspapers, Inc.*, 88 Cal. Rptr. 2d 802, 824 (Cal. Ct. App. 1999); *Gilbert v. Edmondson*, 388 S.E.2d 713, 714 (Ga. Ct. App. 1989); *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992); *Super. Glass Co. v. E. Greenwich Sav. Fund & Loan Ass'n*, 169 A.2d 380, 382 (R.I. 1961). Indeed, Plaintiffs' failure to plead basic facts like the dates and persons involved in the agreements or their terms alone belies the plausibility of such a claim.

Regardless, Plaintiffs certainly do not adequately plead mutual assent to any implied contract to safeguard their personal information. Plaintiffs allege that implied contracts were created by providing their personal information to Defendants. *See* Compl. ¶¶ 273–280. This is not enough. "Although an implied in fact contract may be inferred from the conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an intent to promise." *De Meo*, 337 Cal. Rptr. 3d at 492 (citation modified). Plaintiffs do not plead any facts plausibly showing what exactly the Companies did or why it amounts to an implied promise to undertake any measures with respect to data security. *See, e.g.*, *Ortiz v. Perkins & Co.*, No. 22-cv-03506, 2022 WL 16637993, at *6 (N.D. Cal. Nov. 2, 2022).

Plaintiffs also fail to allege facts plausibly showing consideration for any implied contract. "Several courts have specifically found that consideration is required for an implied contract claim regarding data security. Rather than alleging any kind of consideration, Plaintiffs allege that supplying [IGT and Brightstar] with user data in exchange for services was sufficient to establish an implied in fact contract. That allegation is insufficient to support a claim for breach of implied contract." *Beltran v. Doctors Med. Ctr. of Modesto*, No. 23-cv-01670, 2025 WL 1635467, at *12 (E.D. Cal. June 9, 2025) (citation modified) (collecting cases).

**D. <u>Plaintiffs Fail to State a Claim for Unjust Enrichment (Count III).</u>**

Plaintiffs' unjust enrichment claim is misplaced for a simple reason—the litany of other claims they bring are not "inadequate." Under California, Georgia, and Indiana law, a plaintiff cannot sue for unjust enrichment when an adequate remedy at law exists. *See Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 3d 373, 207–08 (Cal. Ct. App. 2023); *Eastside Recovery, LLC v. Calhoun*, 890 S.E.2d 135, 141 (Ga. Ct. App. 2023); *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004). General equity principles dictate that "[t]he inquiry turns on 'the *availability* of a remedy at law, not the *viability* of that remedy.'" *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 127 (D. Mass. 2024) (quoting *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020)); *see also Bednyak v. Fin Risk Mitig., Inc.*, 739 F. Supp. 3d 353, 363 n.7 (E.D. La. 2024); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 334–35, 339, 341–42 (S.D.N.Y. 2018); *In re Merrill Lynch Auction Rate Sales Sec. Litig.*, 758 F. Supp. 2d 264, 287 (S.D.N.Y. 2010). Plaintiffs' plainly have other causes of action at law available (like their contract claim), and damages would plainly remedy any past harms they can demonstrate.

For similar reasons, Plaintiffs' claim under any state's law fails as a matter of federal equity jurisdiction. "[T]he Supreme Court has instructed that a federal court's equitable authority remains cabined to the traditional powers exercised by English courts of equity, even for claims arising under state law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020). Thus, regardless of whether "a state authorizes its courts to provide equitable relief when an adequate legal remedy exists, such relief may be unavailable in federal court because equitable remedies are subject to traditional equitable principles unaffected by state law." *Id.* at 841. Plaintiffs do not and cannot show that they lack an adequate remedy at law. *See In re Apple Processor Litig.*, No. 22-cv-16164, 2023 WL 5950622, at *2 (9th Cir. Sep. 13, 2023) (concluding that plaintiffs' claims for, among other things, unjust enrichment were "correctly dismissed" under *Sonner* because they "were obligated to allege that they had no adequate legal remedy in order to state a claim for equitable relief, and they have failed to explain how the money they seek through [equity] is any different than the money they seek as damages" (citation modified)). And again, it does not matter

whether Plaintiffs can or will actually prevail on those claims; what matters is whether a remedy at law is available. *See Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) (applying *Sonner* to conclude that plaintiffs' "failure to prove their Cartwright Act claim [for damages] does not make that remedy inadequate" (citation modified)).

Plaintiffs' unjust enrichment claim also fails on the merits. To start, it is not cognizable because of Plaintiffs' contractual relationships with the Companies. They allege a duty to safeguard information based on their "agree[ments] to provide Defendants with their Private Information under certain terms," Compl. ¶ 173, and that the Companies "collected" their information "in connection with Plaintiffs' [customer or employment] relationship[s]," *id.* ¶ 7, which are contractual in nature, *see, e.g., Butler*, 92 U.S. at 415; *Johar*, 299 Cal. Rptr. 3d at 393. They also bring a breach-of-contract claim based on the supposed duty to safeguard their information. Under each state's laws, these allegations preclude recovery on an unjust enrichment claim. *See Cont'l Cas. Co. v. Enodis Corp.*, 417 F. App'x 668, 670 (9th Cir. 2011) ("Under California law, unjust enrichment is an action in quasi-contract and is not cognizable when there is a valid and enforceable contract between the parties."); *Bogard v. Inter-State Assur. Co.*, 589 S.E.2d 317, 319 (Ga. Ct. App. 2003) ("[T]he existence of the contract between the parties precludes Bogard's unjust enrichment claim."); *Fiederlein v. Boutselis*, 952 N.E.2d 847, 857 (Ind. Ct. App. 2011) ("[U]njust enrichment permit[s] recovery where no express contract or contract in fact exists."); *IDC Clambakes, Inc. v. Carney ex rel. Goat Island Realty Tr.*, 246 A.3d 927, 933 (R.I. 2021) (noting that unjust enrichment occurs when the benefit is conferred "without a contract" (citation omitted)).

The unjust enrichment claim also fails because Plaintiffs do not plausibly allege that they conferred a concrete or identifiable benefit on the Companies. Plaintiffs do not allege that they paid a fee for data security, paid a premium tied to cybersecurity protections, or conferred any traceable monetary benefit related to the alleged breach. In the absence of a plausible allegation of a benefit *conferred by Plaintiffs* on the Companies, an unjust enrichment claim fails. *See, e.g.*, *In re Zappos.com, Inc.*, No. 12-CV-00325-RCJ, 2013 WL 4830497, at *5 (D. Nev. Sept. 9, 2013)

("An unjust enrichment claim requires that the plaintiff has in some way conferred a benefit onto the defendant"). Plaintiffs' formulaic recitation of the elements of an unjust enrichment claim here should be dismissed. *See Ames v. Caesars Ent. Corp.*, No. 17-cv-02910, 2019 WL 1441613, at *5 (D. Nev. Apr. 1, 2019) (Navarro, J.) (dismissing unjust enrichment claim based on plaintiff's "formulaic recitation of a cause of action" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

**E. <u>Plaintiffs Fail to State a Claim for Invasion of Privacy (Count IV).</u>**

Plaintiffs bring various versions of the intentional tort claim for invasion of privacy, but they all suffer from the same fundamental problem: the conduct alleged to have "invaded" Plaintiffs' privacy was carried out by cybercriminals, not IGT and Brightstar. Plus, the economic loss doctrine again bars recovery.

***1. Intrusion upon Seclusion***

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation modified). Georgia law is similar. *See Yarbray v. S. Bell Tel. & Tel. Co.*, 409 S.E.2d 835, 837 (Ga. 1991) ("The 'unreasonable intrusion' aspect of the invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns." (citation omitted)).

The California and Georgia Plaintiffs do not allege that IGT and Brightstar intentionally intruded into something Plaintiffs expected to be private—nor could they. "[T]he only *intrusion* [was] perpetrated by the [cybercriminals], *not* [IGT and Brightstar]." *Williams v. TMC Health*, No. CV-23-00434, 2024 WL 4364150, at *7 (D. Ariz. Sep. 30, 2024). And any failure to take adequate security measures does not amount to an intentional intrusion. *See In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646 (N.D. Cal. 2024) ("[N]o authority [exists] that suggests that failure to take adequate measures to protect against the intentional intrusion of a third party satisfies the first element of a claim for intrusion on seclusion . . . ." (quoting *Damner v.*

*Facebook Inc.*, No. 20-cv-05177, 2020 WL 7862706, at *6 (N.D. Cal. Dec. 31, 2020))); *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1377 (N.D. Ga. 2021) ("Aside from conclusory allegations . . . , Plaintiffs have not plausibly alleged any facts indicating that Defendant—as opposed to the third party that allegedly carried out the Data Breach—actively participated in the alleged intrusion into Plaintiffs' affairs. Instead, the central narrative of Plaintiffs' factual allegations is that Defendant failed to take sufficient precautions to prevent this intrusion." (citation omitted)).

For their part, the Indiana and Rhode Island Plaintiffs' claims fail because those states' laws require a *physical* intrusion, which Plaintiffs plainly did not suffer. "This tort has been construed narrowly by the Indiana courts. . . . [N]o Indiana cases exist 'in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home." *Lemaster v. Spartan Tool, LLC*, No. 08-cv-00731, 2009 WL 700240, at *4 (S.D. Ind. Mar. 16, 2009) (quoting *Creel v. I.C.E. & Assoc., Inc.*, 771 N.E.2d 1276, 1280 (Ind. Ct. App. 2002)). Similarly "[t]he relevant provision [of Rhode Island law] covers only 'physical solitude or seclusion." *Russell v. Salve Regina Coll.*, 890 F.2d 484, 488 (1st Cir. 1989) (citation omitted), *rev'd on other grounds*, 499 U.S. 225 (1991); *see id.* ("The only area 'invaded' was Russell's psyche. We cannot lightly predict that the Rhode Island Supreme Court would interpret the statute contrary to its literal language, in view of the statement of that Court that it will give statutory language its plain meaning absent compelling reasons to the contrary.").

None of the Plaintiffs can demonstrate that any intrusion was highly offensive or egregious. "[C]ourts have declined to find 'highly offensive' conduct or an 'egregious breach of social norms' where only negligence is alleged with respect to a data breach, as opposed to intentional violations of privacy rights." *Accellion*, 713 F. Supp. 3d at 646–47 (collecting cases); *see also Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012, 2024 WL 2060140, at *7 (S.D. Cal. May 8, 2024), *aff'd* 2025 WL 1704437 (9th Cir. June 18, 2025). Plaintiffs' allegations here amount to nothing more than negligent cybersecurity defenses—implausible allegations particularly in light of the Company's ISO 27001 certification at the time of the incident, but ones sounding in negligence all

the same. Accordingly, Plaintiffs have not alleged "highly offensive" conduct by IGT and Brightstar.

***2. Public Disclosure of Private Facts***

A California claim for public disclosure of private facts requires: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 478 (Cal. 1998) (citation omitted). Other states' laws are similar. *See Cottrell v. Smith*, 788 S.E.2d 772, 786–87 (Ga. 2016); *J.H. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 19 N.E.3d 811, 815 (Ind. Ct. App. 2014); R.I. Gen. Laws § 9-1-28.1.

Plaintiffs' claims of public disclosure of private facts fail because they do not allege a sufficient basis to believe that IGT and Brightstar (as opposed to the cybercriminal) "communicated [their information] in a way that either reaches or is sure to reach the public in general or a large enough number of persons such that the matter is sure to become *public* knowledge.'" *Duffy*, 760 F. Supp. 3d at 724–25 (quoting *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 382 (Ind. 2022)). They allege that there was a "public disclosure" because a "disclosure was made to cybercriminals." Compl. ¶ 305. But even if there had been an intentional disclosure—which there was not—cybercriminals are not the public in general. At most, Plaintiffs' allegations suggest that their information *might* have been or is being disseminated on the internet. (Of course, that is actually not true.) But "[c]ourts have routinely found such allegations insufficient to constitute a 'public disclosure' at this stage." *Duffy*, 760 F. Supp. 3d at 725; *see also Porten v. Univ. of S.F.*, 134 Cal. Rptr. 839, 841 (Cal. Ct. App. 1976) ("[T]he University's disclosures [were] not a communication to the public in general or to a large number of persons as distinguished from a communication to an individual or a few persons."); *Owens v. Propes*, 601 F. Supp. 3d 1360, 1371 (M.D. Ga. 2022) ("If there was not a widespread disclosure, then there is no 'public disclosure.'" (quoting *280 Partners, LLC v. Bank of N. Ga.*, 352 835 S.E.2d 377, 383 (Ga. Ct. App. 2019)).

Finally, like their claim for intrusion upon seclusion, their claim for public disclosure of private facts is based on mere negligent cybersecurity defenses, which does not amount to an *intentional* tort, nor "'highly offensive' conduct or an 'egregious breach of social norms.'" *Accellion*, 713 F. Supp. 3d at 646–47.

**F. Plaintiffs Fail to State a Claim Under the Nevada Consumer Fraud Act[5] (Count V).**

The Nevada Consumer Fraud Act, Nev. Rev. Stat. § 41.600(1), provides a private right of action to recover for "consumer fraud," which is defined to include deceptive trade practices under Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0915 to 598.0925. *See* Nev. Rev. Stat. § 41.600(2)(E); *Shlesinger v. Bank of Am., N.A.*, No. 11-CV-2020-PMP-PAL, 2012 WL 2995698, at *6 (D. Nev. July 23, 2012). Plaintiffs' NCFA claim fails for multiple reasons.

*First*, the allegations of misconduct supporting Plaintiffs' NCFA claim have no connection with "the sale or lease of goods or services," and therefore fail to constitute "consumer fraud" under the NCFA. Plaintiffs' complaint invokes two of the statutory definitions of consumer fraud: a knowing failure "to disclose a material fact *in connection with the sale or lease of goods or services*" and a knowing violation of "a state or federal statute or regulation *relating to the sale or lease of goods or services*." Nev. Rev. Stat. § 598.0923(1)(b)–(c) (emphasis added). Plaintiffs allege that the Companies violated these provisions by: (i) knowingly failing to comply with common law and statutory duties, including those imposed by the FTC Act; and (ii) knowingly omitting, suppressing, or concealing the material fact of its inadequate security and noncompliance with common law and statutory duties. Compl. ¶ 319. But Plaintiffs have not alleged *any* facts showing that these acts or omissions were in connection with the sale of goods or services,[6] a

[5] Plaintiffs bring their NCFA claim against both Brightstar and IGT on behalf of all Plaintiffs and the entire class. This claim is likewise subject to dismissal because of the statute's presumption against extraterritoriality. Plaintiffs have failed to put forth allegations related to any alleged misconduct occurring in the state of Nevada—or in any forum for that matter. *See Welk Biology Co. v. Hakumo LLC*, No. 24-cv-01613, 2025 WL 2421232, at *17 (D. Nev. Aug. 20, 2025) (dismissing claim under the doctrine where the plaintiff did not "allege any relevant acts that took place in Nevada").

[6] To the extent Plaintiffs intend to distinguish between employees versus customers for purposes of their NCFA claim, the allegations in their complaint improperly collapse these two distinct categories of putative class members.

deficiency fatal to their claims from the outset. *Gibilterra v. Aurora Loan Servs., LLC*, No. 12-CV-685, 2013 WL 4040820, at *2 (D. Nev. Aug. 6, 2013) (dismissing NCFA claims based on deceptive acts unrelated to consumer transactions for failing to allege misconduct involving the sale/lease of goods and services). Indeed, Plaintiffs invoke the FTCA, but it "does not deal with the sale or lease of goods or services" and therefore cannot serve as a predicate for consumer fraud under Section 598.0923(c). *Ramos v. Liberty Mut. Ins. Co.*, No. 14-CV-839, 2014 WL 4354138, at *4 (D. Nev. Sep. 3, 2014).

*Second*, Plaintiffs' conclusory allegations do not support a claim based on any knowing omission. Because such a claim "sound[s] in fraud," Plaintiffs must plead it with particularity under Rule 9(b)—but fail to do so here. *Maddox v. Alder*, No. 23-cv-005352024 WL 4349481, at *10 (D. Nev. Sep. 29, 2024). Plaintiffs do not identify a specific material[7] omission, much less any critical details on the "who, what, where, when, and how" of this claim or their alleged transactions with Defendants or the precise deficiencies in their security measures. And the complaint includes no facts making it plausible that Defendant *knowingly* omitted or concealed any material information. *See EVIG, LLC v. Fantasy, Inc.,* No. 24-CV-00349, 2025 WL 947543, at *5 (D. Nev. Mar. 28, 2025) (Navarro, J.) (dismissing NCFA claim for failure to include non-conclusory allegations that the defendant acted "knowingly").

*Third*, Plaintiffs fail to plausibly allege a knowing violation of any statute or regulation. Plaintiffs' vague and conclusory allegations that Defendants violated Section 5 of the FTCA and unspecified "data security statutes" cannot support a NCFA claim. *See, e.g.*, *id.* (dismissing vague and conclusory consumer fraud act claims). Furthermore, because the FTCA lacks a private right of action, *O'Donnell*, 504 F. App'x at 568, it cannot support an NCFA claim based on a knowing statutory violation, *Peatrowsky v. Persolve*, No. 12-CV-00935, 2014 WL 1215061, at *5 (D. Nev.

---

[7] Plaintiffs' NCFA claim also fails because it does not identify any omitted "material facts," as required under Section 598.0923(1). "[A] material fact is one that 'a reasonable [person] would attach importance to . . . in determining [a] choice of action in the transaction in question'" *Poole v. Nev. Auto Dealership Invs., LLC*, 449 P.3d 479, 486 (Nev. Ct. App. 2019). It is not suggested, or even plausible to suggest, that customers would have declined to play lottery games or employees would have refused employment if Defendants disclosed every technical detail of their data security practices.

Mar. 24, 2014) (dismissing NDTPA claim premised on violation of statute that did not provide a private right of action).

*Fourth*, Plaintiffs have not alleged any damages proximately caused by their reliance on any knowing omission by Defendants. The NCFA requires proof that an act of consumer fraud proximately caused damage to the plaintiff, and the "causation [element] includes reliance." *Picus v. Wal-Mart Stores, Inc.,* 256 F.R.D. 651, 658 (D. Nev. 2009); *see also Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1178 (D. Nev. 2021). Plaintiffs allege only that they "acted reasonably in relying on Defendants' omissions" and "would have been unable to continue in business, and . . . would have been forced to adopt reasonable data security measures." Compl. ¶ 322. This is not enough. Plaintiffs Schoenbrun and Morris (alleged customers) and Plaintiffs Loescher and Ziman (alleged employees) do not allege that they used Defendants' services or sought/became employed based on a belief or understanding about the quality of Defendants' data security. *McDonald v. Navy Fed. Fin. Grp., LLC*, No. 2:23-CV-01325-ART-EJY, 2023 WL 5797724, at *4 (D. Nev. Sep. 7, 2023), *R&R* (dismissing NCFA claim because "Plaintiff does not allege facts demonstrating Defendant made an intentional misrepresentation upon which she relied resulting in her harm."), *R. & R. adopted*, 2024 WL 3273797 (D. Nev. July 1, 2024).

To the contrary, the harm Plaintiffs allege—risk of identity theft, actual fraud, lost time, etc.—flows from the alleged inadequacy of Defendants' security measures, not from any purported omission. There is no allegation that, without the alleged omissions, the incident would have been avoided. Rather, Plaintiffs assert only that Defendants would have been required to implement reasonable data security measures and comply with applicable law. But compliance alone does not necessarily prevent a cyberattack, as many courts have recognized. *See Feins v. Goldwater Bank NA*, No. CV-22-00932-PHX, 2022 WL 17552440, at *7 (D. Ariz. Dec. 9, 2022) ("[A] data security infrastructure in accordance with industry standards does not completely preclude the possibility of a data breach, and conversely a data breach does not by itself demonstrate an inadequate data security infrastructure.").

**G. Plaintiffs Fail to State a Claim under the CCPA (Count VI).**

The final two counts are California specific and brought by Plaintiff Schoenbrun. He has failed to allege a plausible CCPA claim for several reasons.

*First*, as a threshold matter, because Plaintiff Schoenbrun failed to comply with the statute's 30-day notice requirement before initiating litigation, the claim must be dismissed to the extent it seeks relief beyond actual damages. To recover anything but actual pecuniary damages (e.g., statutory damages), "consumers must first provide 30-days' written notice to the business from which they are trying to collect statutory damages *before initiating litigation*." *Griffey v. Magellan Health Inc.*, No. CV-20-01282, 2022 WL 1811165, at *6 (D. Ariz. June 2, 2022) (emphasis added); *see* Cal. Civ. Code § 1798.150(b) (requiring notice "prior to initiating any action" for statutory damages under the CCPA). The California Plaintiff concedes that he did not give the required pre-suit notice until after he filed his original complaint. *See* Compl. ¶ 335; *see* No. 25-cv-02048, Dkt. No. 1 (Schoenbrun's original complaint filed October 22, 2025). That contravenes the statutory purpose "to allow the defendant an opportunity to cure the defect outside of court" and thus bars the recovery of any statutory damages.[8] *Griffey*, 2022 WL 1811165, at *6 ("If a notice filed before the 30-day deadline could be updated when an amended complaint is filed and satisfy the 30-day notice requirement, then having the pre-suit notice requirement would be pointless. . . . [The plaintiff] cannot supplement the time between the notice and the initiation of the lawsuit by amending his complaint."); *see Price v. First Fin. Sec., Inc.*, No. 24-CV-10985, 2025 WL 2427997, at *3 (C.D. Cal. July 21, 2025) (similarly interpreting CCPA strictly to require notice before initiating litigation). Accordingly, Plaintiffs' CCPA claim must be dismissed to the extent it seeks statutory damages.

*Second*, the CCPA claim fails because Plaintiff Schoenbrun has not sufficiently alleged that Defendants are "businesses" within the meaning of the statute. The CCPA defines a "business" to include only entities "that collect[] consumers' personal information, or on the behalf

---

[8] Despite these failures, the Company did in fact cure the alleged defect by resecuring the data.

of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information." Cal. Civ. Code. § 1798.140(d)(1). Plaintiff's only relevant allegation is that "Defendants are 'business[es]' under Section 1798.140(d) in that they are organized for profit or financial benefit of their shareholders or other owners, with gross revenues of $25 million." Compl. ¶ 329. But there are no facts suggesting that the Companies determine the purposes and means of processing of consumers' personal information, warranting dismissal. *Accellion*, 713 F. Supp. 3d at 641 ("Without any allegations as to what [the defendant] decides or 'determines' with respect to processing Plaintiffs' PII, the Court cannot find that the Complaint has alleged that [the defendant] is a 'business' for the purposes of the CCPA."); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 288 (E.D. Pa. 2024) ("The allegation that NCB used their PII to provide its debt collection services to the Bank Defendants is a far cry from alleging it played any role in determining how to process the plaintiffs' PII.").

*Third*, Plaintiff has failed to plausibly allege a breach of the CCPA. "[T]o state a claim under the CCPA, a plaintiff must allege that their personal identifiable information was accessed as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." *Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1033 (C.D. Cal. 2024). Plaintiff recites the elements of a CCPA claim but fails to allege with any specificity how either Defendant breached any duty to implement and maintain reasonable security procedures—including by omitting any allegations describing each Defendant's conduct in particular. *Id.* (dismissing CCPA claim against multiple defendants because the plaintiffs "simply restate[d] the statutory requirements under the CCPA" and "fail[ed] to identify at which institution or institutions such business security violations took place"); *Maag v. U.S. Bank, Nat'l Ass'n*, No. 21-CV-00031-H-LL, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (collecting cases dismissing CCPA claim for failing to allege specific facts regarding inadequate security). Such vague boilerplate allegations cannot sustain a CCPA claim, particularly in light of the Company's ISO 27001 certification.

### H. <u>The California Plaintiff Fails to State a Claim under California's Unfair Competition Law (Count VII).</u>

Plaintiff Schoenbrun also alleges a violation of the UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice," on behalf of himself and the California subclass. *See* Cal Bus. & Prof. Code § 17200. This claim fails for a lack of standing, because he has an adequate remedy at law, and because the complaint fails to adequately plead a violation of the UCL.

#### ***1. The California Plaintiff Fails to Allege an Injury That Confers Standing to Bring a UCL Claim.***

Plaintiff alleges "[lost] confidentiality and privacy of [his] personal information, stress, fear, and anxiety." Compl. ¶ 334. But standing for a UCL claim is "substantially narrower" than Article III standing and requires "lost money or property." *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 886 (Cal. 2011). Plaintiff has not alleged that. He alleges that someone *attempted* to transfer money from his bank account following the data breach and that someone fraudulently purchased a computer through his eBay account. But critically, he does not allege that he actually lost money or property in either instance—that is, that he lost the $2000–3000 dollar attempted transfer or that he was held financially responsible for the unauthorized eBay purchase. *See* Compl. ¶ 208. His other alleged harms fall short, because "allegations that the heightened risk of identity theft, time and money spent on mitigation of that risk, and property value in one's information, do not suffice as injury under the UCL." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012).

#### ***2. The California Plaintiff's UCL Claim Fails Because He Fails to Sufficiently Allege That He Does Not Have an Adequate Remedy at Law.***

Remedies under the UCL are limited to equitable relief, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 63 P.3d 937, 943 (2003), which means that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL," *Sonner*, 971 F.3d at 844. But the California Plaintiff's UCL claim is based on the same conduct for which Plaintiffs seek monetary damages—that is, remedies at law—in

other claims. The California Plaintiff is therefore not entitled to equitable relief under the UCL. *See supra* Section II.D.

### *3. Plaintiffs Fail to Allege a Violation of the UCL.*

On the merits, too, the California Plaintiff fails to state a claim for a violation of the UCL under any of the three statutory prongs.

Starting with the "unlawful" prong, the statute "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 561 (1999) (citation modified). Plaintiffs' allegations here are based on the same conduct that they allege supports their other claims. As explained above, however, Plaintiffs fail to adequately plead any other legal violation upon which a UCL claim could be premised. *See Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1195 (N.D. Cal. 2012) (dismissing "unlawful" prong claims based on breach of contract and implied covenant of good faith because the court found the plaintiffs failed to state a claim for those underlying violations); *Antman v. Uber Techs., Inc.*, No. 15-CV -01175, 2018 U.S. Dist. LEXIS 79371, at *29 (N.D. Cal. May 10, 2018) ("[I]f there is no predicate unlawful violation, there is no UCL 'unlawful' claim.").

Plaintiffs also fail to adequately plead an "unfair" practices violation of the UCL. Under any test for "unfairness," the California Plaintiff has failed to state a claim.[9] The "tethering" test does not work, because the California Plaintiff merely attempts to repackage alleged statutory noncompliance as "unfairness." *See*, *e.g.*, Compl. ¶ 339b (citing the CCPA). But those arguments are better suited to pleading violations of the "unlawful" prong of the UCL. The California Plaintiff has also failed to allege conduct that meets the high bar of the "balancing" test, because any allegations are miles away from "immoral, unethical, oppressive, or substantially injurious"

---

[9] The law on the correct test for determining whether a practice is "unfair" under the UCL is in flux, but "there are at least two possible tests: (1) the 'tethering test,' which requires 'that the public policy which is a predicate to a consumer unfair competition action under the "unfair" prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions,' and (2) the 'balancing test,' which examines whether the challenged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014).

practices—especially since the California Plaintiff cannot even recall providing his information to IGT or Brightstar, *see* Compl. ¶ 204.

Finally, it is not even clear whether the California Plaintiff alleges a separate "fraudulent" UCL violation, *see* Compl. ¶ 343, but any such claim is subject to the heightened pleading requirements of Rule 9(b), *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1088 (S.D. Cal. 2020), (a "UCL claim under the 'fraudulent' prong is governed by the pleading requirements of Rule 9."), *recons. denied*, 2020 WL 3840559 (S.D. Cal. July 8, 2020). The California Plaintiff merely alleges in conclusory fashion that Defendants misrepresented that they would protect his information by implementing reasonable security measures and that they would comply with common law and statutory duties. But tellingly, the California Plaintiff fails to allege even *one* affirmative misrepresentation by Defendants. That does not meet the heightened particularity requirement of Rule 9(b). The UCL claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the consolidated complaint should be dismissed for lack of subject-matter jurisdiction and/or for failure to state a claim.

Dated: February 17, 2026

By: /s/ Oliver J. Pancheri
Nicholas J. Santoro
Nevada Bar No. 532
Oliver J. Pancheri
Nevada Bar No. 7476
SPENCER FANE LLP
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: (702) 408-3400
nsantoro@spencerfane.com
opancheri@spencerfane.com

Cari K. Dawson (*pro hac vice* pending)
David B. Carpenter (*pro hac vice* pending)
ALSTON & BIRD LLP
1201 West Peachtree St.
One Atlantic Center
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777
cari.dawson@alston.com
david.carpenter@alston.com

*Attorneys for IGT*

SNELL & WILMER L.L.P.

By: /s/ Bradley T. Austin
Bradley T. Austin
Nevada Bar No. 13064
1700 S Pavilion Center Drive, Ste. 700
Las Vegas, Nevada 89135

Jim Ducayet (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

Colleen T. Brown, Esq. (*pro hac vice)*
Joshua J. Fougere (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005

*Attorneys for Brightstar Global Solutions Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, District of Nevada by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

DATED February 17, 2026.

*/s/ Lyndsey Mosbey*
An Employee of Snell & Wilmer L.L.P.